STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Entergy Nuclear/ Vermont Yankee
   Thermal Discharge permit amendment } Docket No. 89-4-06 Vtec
      (Appeal of Connecticut River Watershed Council,
         Trout Unlimited (Deerfield/Millers 349 Ch.),
         and Citizens Awareness Network)
      (Appeal of New England Coalition
         on Nuclear Pollution)
      (Cross-Appeal of Entergy Nuclear
         Vermont Yankee, LLC)

{
}
}
}
}
}
}
}
}
}
}
}

### Decision and Order on Renewed Motion for Stay

Appellants Connecticut River Watershed Council, Trout Unlimited (Deerfield/Millers 349 Chapter), Citizens Awareness Network (Massachusetts Chapter) and New England Coalition on Nuclear Pollution, and Cross-Appellant Entergy Nuclear Vermont Yankee, LLC, appealed from a March 30, 2006 decision of the Vermont Agency of Natural Resources, approving an amendment of a thermal discharge permit issued to Entergy Nuclear Vermont Yankee, LLC.

Appellants Connecticut River Watershed Council (CRWC), Trout Unlimited, and Citizens Awareness Network (CAN) are represented by Patrick A. Parenteau, Esq., David K. Mears, Esq., and Justin E. Kolber, Esq.; Appellant New England Coalition on Nuclear Pollution (NECNP) is represented by Evan J. Mulholland, Esq.; Cross-Appellant-Applicant Entergy Nuclear Vermont Yankee, LLC (Entergy) is represented by Elise N. Zoli, Esq., Peter D. Van Oot, Esq., Sarah Heaton Concannon, Esq. and U. Gwyn Williams, Esq.; the Vermont Agency of Natural Resources is represented by Catherine Gjessing, Esq. and Warren T. Coleman, Esq.; and the Water Resources Panel of the Natural Resources Board

1

is represented by John H. Hasen, Esq.[1]

Appellants have renewed their motion to stay the permit amendment, pending the conclusion of the merits of this appeal[2]. The trial is scheduled to be held at the Windham Superior Courthouse in Newfane on June 26, 27, 28 and 29; on July 5 and 6; and on July 9, 10, 11, 12, and 13; and will continue, if necessary, at the Environmental Court in Berlin on July 26 and 27. In addition, July 3 is available on the Court's schedule for any motion hearings or conferences by telephone. The final submission of responsive memoranda on the parties' requests for findings and memoranda of law is due (on the present schedule) on August 9, 2007.

The permit amendment on appeal in this matter allows the thermal discharge from Entergy Nuclear/Vermont Yankee to increase the temperature of the Connecticut River, within a defined measurement area or mixing zone, by an additional 1° F (by comparison to its existing permit[3]) from June 16 through October 14 of each year. Appellants argue that the stay will preserve the status quo of Entergy's existing permit conditions during the pendency of this litigation. It is the applicant that bears the burden of proof that it qualifies for the amendment at issue in this appeal.

As in 2006, the Court is obligated to consider the movants' likelihood or substantial

---

[1] The Windham Regional Commission appeared through James Matteau and John Bennett but has since withdrawn as a party.

[2] The Court has considered all the memoranda filed in relation to this motion; any motions to exclude them are DENIED as moot.

[3] The underlying permit of which this is an amendment expired on March 30, 2006. The parties have advised the Court that the renewal permit process is unlikely to result in the issuance of a renewal permit until at least January of 2008, and the Court therefore denied a motion to consolidate the prospective appeal of that permit with the present appeal. V.R.E.C.P. 2(b). The parties should be prepared to advise the Court whether the thermal discharge conditions are also at issue in the renewal permit proceedings.

possibility of success on the merits of this <u>de novo</u> appeal, any irreparable injury that may occur in the absence of a stay, whether the grant of a stay will substantially harm other parties, and whether a stay will serve the best interests of the public. <u>In re Allied Power & Light Co.</u>, 132 Vt. 554, 556 (1974), as discussed by Justice Skoglund in issuing a stay during the pendency of the appeal in <u>In re Stormwater NPDES Petition</u>, Docket No. 2004-515 (Vt. Supreme Ct., April 7, 2005).

For the purposes of a motion to stay in a case such as this, the status quo is the facility's continued operation under its existing permit, not its operation under the amendment on appeal. In their memoranda, the parties continue to raise the issue of the scope of this proceeding in this Court. As we explained in 2006 and in footnote 4 on page 5 of the decision issued today on the other pending motions, the statutory provision under which this appeal is taken is entirely unambiguous that it is <u>de novo</u>. 10 V.S.A. §8504(h). Unlike in judicial review of administrative agency action in the federal system or in some other states, no presumption is afforded the fact that the permit amendment was issued by the ANR, and the Court is not charged with determining whether the ANR determination is supported by substantial evidence on the record as a whole.

The fact that the appeal is <u>de novo</u> casts no aspersions on the capability, hard work, or careful consideration given to these or any other proceedings at the ANR level. It was the legislature, not this court, that established the <u>de novo</u> standard applicable to cases in which the ANR is the decisionmaker appealed from; it was equally a <u>de novo</u> standard when such appeals were heard by the Water Resources Board under former 10 V.S.A. §1269. The <u>de novo</u> standard in these appeals may be contrasted with the deference given ANR technical determinations in Act 250 land use cases, 10 V.S.A. §8504(i), or the deference given ANR technical pollution abatement or environmental restoration directives in enforcement cases. Compare 10 V.S.A. §8012(b)(2) (ANR orders which must be remanded to the agency if the Court disagrees with the remedial provisions) with 10 V.S.A.

3

§8012(b)(3), (4), (5) (those which may be modified or determined anew by the Court). The de novo standard does not allow or encourage the Court to make policy contrary to that promulgated by the ANR in its regulations or the legislature in its statutes; rather, the Court is obligated to apply to the evidence which the parties will present in the scheduled trial the same substantive standards as were applicable before the agency.

Appellants have come forward with sufficient evidence to demonstrate a substantial possibility that they will prevail on the merits; that is, a sufficiently substantial possibility to examine and weigh the other factors to be considered in whether or not to grant a stay.

Appellants have shown sufficient potential for irreparable injury to American shad in the Connecticut River through the summer of 2007 (for the growth of the present cohort of juveniles and as they become accustomed to cooler water temperatures prior to their migration down the river in the fall) to warrant the stay during the pendency of this summer's trial, at which further evidence is expected to be presented as to the relative effects of predation, river temperature and any other factors[4] on fluctuations in the population of shad, salmon and any other indicator species.

On the other hand, the grant of the stay will not substantially harm the other parties. Entergy has only shown a financial consequence to it, due to the operation of the cooling towers rather than the discharge to the river during the applicable period. Because the harm is financial, by definition it is not irreparable. The Court expects that the parties at trial will address Entergy's proffered evidence regarding back pressure in the hottest summer months and the respective limitations of the cooling towers and the river cooling capacity under certain operating conditions. During the approximate two-and-a half to

[4] The parties should be prepared to discuss whether they propose to present evidence on other operating characteristics of the Vermont Yankee facility or whether factors relevant to the renewal permit application may not be relevant to this application.

three months of the stay, Entergy will be able operate, as it has done, under the terms and conditions of its previous permit.

Entergy argues that harm will occur to the public interest due to the effect on the emission of greenhouse gases into the atmosphere that would not otherwise have been emitted. The economic report provided in support of this argument, however, does not provide useful information on the difference between the two scenarios solely during the two-and-a-half to three months between June 15, 2007 and the conclusion of the litigation regarding this one-degree amendment, which is the only period of time this stay would be in effect. Rather, it assumes that a stay would be in effect until the year 2030. This period is an absurdity for several reasons, not the least of which is that by that time Entergy would be applying for (and the ANR staff would be working on and the other parties would be commenting on) the terms of the sixth five-year renewal permit after the one currently being considered.

To the extent that it is even valid to interpolate a three-month 2007 value from the evidence provided by Entergy, it appears that a relatively small amount of money would be expended on the operation of the cooling towers during that time, due to the stay, that would not have had to have been expended in any event on cooling tower operation under the permit amendment.

Further, the assumption presented in this scenario is that the energy expended on the cooling towers or unable to be generated at Vermont Yankee due to the stay of the one-degree amendment would necessarily have to be generated by coal-fired or natural-gas-fired power plants that would be putting more greenhouse gases into the atmosphere than they would have done without the stay. The evidence does not reflect whether those greenhouse-gas-emitting plants would be generating that capacity without regard to whether the Vermont Yankee plant were operating under its existing permit or under the amendment. Nor does the report reflect whether any of that energy would have come

5

from other nuclear-generated energy, or that generated by hydro, solar, wind or other energy sources, nor whether energy conservation could reasonably make up the difference, and does not address what proportion of the users of that energy would be located in Vermont or in New England, that is, near the ecosystem at issue in this case.

As stated in the 2006 stay ruling, the public will view the plume of water vapor from the cooling tower, but no substantial harm has been shown to result from the mere visibility of the plume to the public. Nor have the parties shown any harm to the public interest from any impairment of the river's flow or volume, due to the operation of the cooling towers in the summer under the present permit.

Balancing the potential positive and negative effects of a two-and-a half to three month stay of this permit amendment on the public interest, the Court concludes that the stay is warranted.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellants' Motion for Renewed Stay is GRANTED, suspending the implementation of the one-degree permit amendment, to remain in effect until a decision is issued on the pending application for the permit amendment, or until further order of the Court.

Done at Berlin, Vermont, this 6th day of June, 2007.

_____
Merideth Wright
Environmental Judge

6